In interpreting Title VII's extension to cover sexual orientation as a subset of discrimination on the basis of sex, the Seventh Circuit relied on a line of Supreme Court cases.
Price Waterhouse held that the practice of gender stereotyping falls within Title VII's prohibition against sex discrimination, and Oncale clarified that it makes no difference if the sex of the harasser is (or is not) the same as the sex of the victim. Our panel frankly acknowledged how difficult it is "to extricate the gender nonconformity claims from the sexual orientation claims.
Id. at 342. The Hively court also noted that the prohibition against sex discrimination has reached sexual harassment. Id. at 345 (citing Meritor Sav. Bank, FSB v. Vinson , 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).[2] The Supreme Court case, Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), discussed by the Seventh Circuit is instructive to the case at hand. "The four justices in the plurality and the two justices concurring in the judgment recognized that Hopkins had alleged that her employer was discriminating only against women who behaved in what the employer viewed as too "masculine" a way-no makeup, no jewelry, no fashion sense." Hively, 853 F.3d at 346. Finally, in reversing the trial court's holding that the plaintiff could not have been discriminated against on the basis of sex, the Seventh Circuit concluded with -
[t]he logic of the Supreme Court's decisions, as well as the common-sense reality that it is actually impossible to discriminate on the basis of sexual orientation without discriminating on the basis of sex, persuade us that the time has come to overrule our previous cases that have endeavored to find and observe that line.
Id. 350-51. Judge Posner concurred in the judgment, but wrote "to explore an alternative approach that may be more straightforward." Id. at 352. (Posner, J. concurring).
But it has taken our courts and our society a considerable while to realize *755 that sexual harassment, which has been pervasive in many workplaces (including many Capitol Hill offices and, notoriously, Fox News, among many other institutions), is a form of sex discrimination. It has taken a little longer for realization to dawn that discrimination based on a woman's failure to fulfill stereotypical gender roles is also a form of sex discrimination. And it has taken still longer, with a substantial volume of cases struggling and failing to maintain a plausible, defensible line between sex discrimination and sexual-orientation discrimination, to realize that homosexuality is nothing worse than failing to fulfill stereotypical gender roles.
Id. at 355. Turning back to the facts of this case, as noted previously, Nelis is not a transsexual. Thus, Nelis persuasively contends, that Ulane , a case only addressing whether or not Title VII protects transsexuals, transgenders, or homosexuals is not at issue here. (Filing No. 26 at 3.) Nelis alleges that he was discriminated against by a fellow male co-worker for not meeting stereotypical expectations of what a man should behave like. (Filing No. 26 at 2.) The Complaint alleges that Nelis was called "sissy" and "queen" among other slurs. (Filing No. 1.) Nelis argues that these comments indicated that his co-workers perceived him to be more feminine than masculine in that he failed to behave in line with a masculine male gender norm. In response, Schahet contends that the allegations in Nelis's Complaint demonstrate a claim for gender identity, rather than discrimination based on sex or sexual orientation. The Court disagrees. While gender identity could be an issue gleaned from the Complaint, the Seventh Circuit noted in Hively , that discrimination on the basis of failure to adhere to stereotypical gender norms is prohibited under Title VII, i.e., sex discrimination, language which Nelis has alleged in his Complaint. The Complaint squarely alleges a gender non-conformity claim, which the Seventh Circuit and Supreme Court cases have recognized. Moreover, Schahet misconstrues the facts of Hively . (Filing No. 28 at 3-4.) ("The Hively plaintiff made no allegation that she did not follow traditional gender norms or that she was discriminated against because of her gender identity. She alleged only that she was denied full-time employment because of her sexual orientation.")
As noted previously, Hively relied on a line of gender non-conformity Supreme Court cases, in alleging that she was discriminated against because she was not a heterosexual female--a female gender norm. Schahet is correct in that the Hively court did not have the issue of gender identity before it; however, the Complaint does not allege a gender identity claim. (Filing No. 28 at 4.) And even if it could be construed to contain a gender identity claim, the Seventh Circuit explicitly recognized that gender non-conformity was protected under Title VII's sex prohibition. In Hively , sexual orientation was the specific behavior at issue for gender non-conformity. However, the Hively court examined gender conformity with regards to masculine and feminine stereotypes associated with being a male and female respectively, which is the behavior at issue in this case. At this stage of litigation, and finding that the case law does not foreclose Nelis's claim based on sex discrimination, the Court determines that Nelis's Complaint is sufficient to state a plausible claim for relief. Accordingly, Schahet's Motion to Dismiss is denied .
IV. CONCLUSION
For the foregoing reasons, Schahet's Motion to Dismiss is DENIED (Filing No. 17). SO ORDERED .

"It is quite possible that these interpretations may also have surprised some who served in the 88th Congress. Nevertheless, experience with the law has led the Supreme Court to recognize that each of these examples is a covered form of sex discrimination." Hively v. Ivy Tech Cmty. Coll. of Indiana, 853 F.3d 339, 345 (7th Cir. 2017)